[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NANCY GIMENA HUISHA-HUISHA, on behalf of
herself and others similarly situated,

    Plaintiffs-Appellees,

    v.

ALEJANDRO N. MAYORKAS, Secretary of
Homeland Security, *et al.*,

    Defendants-Appellants.

No. 22-5325

**OPPOSITION TO MOTION TO INTERVENE AND
MOTION FOR A STAY PENDING APPEAL**

BRIAN M. BOYNTON
    *Principal Deputy Assistant*
    *Attorney General*

MATTHEW M. GRAVES
    *United States Attorney*

SHARON SWINGLE
JOSHUA WALDMAN
    *Attorneys, Appellate Staff*
    *Civil Division*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 514-0236*
    *joshua.waldman@usdoj.gov*

**INTRODUCTION**

This Court should deny the motions brought by 19 States to intervene on appeal and for a stay pending appeal. The States' intervention motion should be denied because it is untimely, their interests are adequately represented by the federal government, and the States lack standing or a type of interest required for intervention. And because the States are not parties to this litigation and not entitled to intervene, they have no basis for seeking a stay pending appeal or an administrative stay.

More than one year ago, in a prior appeal in this case, this Court denied Texas's eleventh-hour motion to intervene. The present motion to intervene is even more untimely and should be denied *a fortiori*. In the seven months since the mandate issued in the prior appeal, the parties fully briefed plaintiffs' motion for partial summary judgment and the district court issued its decision — all while the States took no steps to intervene. Their belated attempt to intervene now should be denied.

Significantly, the States do not contend that the government failed to adequately represent their interests in the district court, and they acknowledge that the government is appealing the judgment below. The States are dissatisfied, and seek intervention, because the government is not seeking a stay pending appeal and instead intends to ask this Court to hold the appeal in abeyance pending other

1

developments that may moot the case.  But that disagreement over the appropriate course of appellate litigation is not a proper basis for intervention.  Indeed, in litigation in the Fifth Circuit brought by the same States, the government appealed from (but did not seek a stay of) a preliminary injunction — yet the States opposed intervention by a third party, agreeing that the government adequately represented the third party's interests notwithstanding the failure to seek a stay.  The same principle should preclude the States' intervention here.

Moreover, the States' disagreement regarding a stay pending appeal only underscores their untimeliness.  The Centers for Disease Control and Prevention (CDC) determined in April 2022 that the orders challenged in this case were no longer required in the interest of public health, and announced its intent to terminate those orders (a conclusion the government continues to defend in ongoing litigation).  The States have thus known for months that if the district court vacated the orders challenged here, the federal government could not assert any resulting irreparable harm that would support a stay pending appeal.  Even knowing that, however, the States did not attempt to intervene until this late date.

In addition, the States have not established Article III standing or an interest in the litigation that would entitle them to intervene.  The States assert that the district court's judgment will cause more noncitizens to be present within their borders, which will lead them to expend more resources on law enforcement and

social services.  But States do not have legally and judicially cognizable interests in avoiding the indirect and incidental effects of federal policies.  And even if the States had standing, their asserted injuries do not stem from the subject of the litigation below — the public-health purposes of the Title 42 policy and whether the CDC's rule and orders are arbitrary or capricious — but instead stem from the purported indirect effects on the States resulting from the resumption of full immigration processing under congressionally enacted immigration laws in Title 8 of the U.S. Code.  Accordingly, the States' asserted interests do not "relat[e] to the property or transaction that is the subject of the action" as required for intervention under Federal Rule of Civil Procedure 24(a)(2).

Because the States are not a party to this litigation, and their motion to intervene should be denied, they have no basis as a non-party to seek a stay.  The States' stay motion can and should be denied on that basis alone.

## BACKGROUND

1.      Under 42 U.S.C. § 265, whenever the Secretary of Health and Human Services "determines that by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States, and that this danger is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interest of the public health," the

3

Secretary may "prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose."

In March 2020, in light of the COVID-19 pandemic, the Department of Health and Human Services (HHS) and CDC issued an interim final rule under Section 265 authorizing the CDC Director to temporarily suspend the introduction of certain persons into the United States. 85 Fed. Reg. 16,559 (Mar. 24, 2020). HHS and CDC also issued an order implementing that authority by temporarily suspending the introduction of certain noncitizens (referred to as "covered aliens") traveling from Canada and Mexico into the United States. 85 Fed. Reg. 17,060 (Mar. 26, 2020). CDC extended the order in April 2020 and again in May 2020, then published a final rule in September 2020 permitting the CDC Director to "prohibit, in whole or in part, the introduction into the United States of persons from designated foreign countries" "for such period of time that the Director deems necessary to avert the serious danger of the introduction of a quarantinable communicable disease." 85 Fed. Reg. 56,424, 56,425 (Sept. 11, 2020) (codified at 42 C.F.R. § 71.40). The CDC Director then issued a new order that suspended the introduction of covered aliens into the United States, subject to certain exceptions, until he determined that "the danger of further introduction of COVID-19 into the United States has ceased to be a serious danger to the public health." 85 Fed. Reg.

65,806, 65,807-08 (Oct. 16, 2020).  In August 2021, CDC conducted a "comprehensive reassessment" and issued a new order replacing and superseding the October order.  86 Fed. Reg. 42,828, 42,831 (Aug. 5, 2021).  CDC's regulation and implementing orders are collectively referred to as its "Title 42" process or policy.

2.      Plaintiffs are six families that unlawfully crossed the U.S.-Mexico border into the United States, and whom the Department of Homeland Security (DHS) determined to be subject to the Title 42 process.  Plaintiffs brought suit in January 2021 on behalf of a putative class of noncitizen family units who are or will be subjected to the Title 42 process.  The district court granted class certification and issued a classwide preliminary injunction.  The district court held that plaintiffs were likely to succeed on the merits because, in the court's view, Section 265 likely did not authorize the government to expel noncitizens once they have crossed the border into the United States.  The court also found that the remaining preliminary injunction factors weighed in plaintiffs' favor.  The district court enjoined the government from expelling class members from the United States under the CDC rule and orders.  *Huisha-Huisha v. Mayorkas*, 560 F.Supp.3d 146 (D.D.C. 2021). The government appealed.  This Court granted a stay pending appeal.  *Huisha-Huisha v. Mayorkas*, D.C. Cir. No. 21-5200, Doc. 1916334 (Sept. 30, 2021).

**3.** Texas moved in this Court to intervene on appeal. *Id.*, Doc. 1917572 (filed Oct. 11, 2021). This Court denied the motion, holding that "[t]he State of Texas has not demonstrated that its motion meets the standards for intervention on appeal." *Id.*, Doc. 1919599 (Order dated Oct. 26, 2021).

**4.** On the merits, this Court affirmed the preliminary injunction in part and vacated in part. This Court held that Section 265 likely authorized "the Executive [to] expel the Plaintiffs from the country," but likely did not authorize the government to "expel them to places where they will be persecuted or tortured." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 772 (D.C. Cir. 2022). The Court remanded for further proceedings.

**5.** On April 1, 2022, following this Court's decision, the CDC issued an order terminating its prior Title 42 orders. *See* 87 Fed. Reg. 19,941 (Apr. 6, 2022). The CDC concluded that because of changed circumstances, including developments in the pandemic, the Title 42 orders were "no longer required in the interest of public health." *Id.* at 19,942. The termination order was to take effect on May 23, 2022. *See id.* at 19,941.

Multiple States — all putative intervenors here — then brought or joined a suit to challenge the termination order, and on May 20, 2022, a Louisiana district court preliminary enjoined the termination order on the ground that it failed to comply with notice-and-comment requirements. *Louisiana v. CDC*, No. 6:22-cv-

6

00885 (W.D. La.), Preliminary Injunction Order, ECF No. 91. The federal government has appealed, but has not sought a stay pending appeal. *Louisiana v. CDC*, No. 22-30303 (5th Cir.).

**6.** On remand in this case, plaintiffs moved for partial summary judgment on their claim that the Title 42 policy — including CDC's regulation and its orders implementing that regulation — was arbitrary and capricious under the Administrative Procedure Act. The federal government opposed, arguing that, although CDC had sought to terminate the orders in April 2022, CDC had reasonably explained the public health need for the orders at the time it issued them and the rule and orders were not arbitrary or capricious.

On November 15, 2022, the district court granted partial summary judgment in plaintiffs' favor. The district court vacated CDC's rule and orders, and permanently enjoined the government from applying the rule and orders to the plaintiff class. *Huisha-Huisha v. Mayorkas*, --- F.Supp.3d ---- 2022 WL 16948610 (D.D.C. 2022). On November 22, 2022, the district court granted the government's motion for a partial final judgment under Federal Rule of Civil Procedure 54(b).

The government filed a notice of appeal on December 7, 2022; on the same day, it notified the district court and the parties that it intended to ask this Court to hold the appeal in abeyance pending the Fifth Circuit proceedings in the States'

7

challenge to the CDC's April 2022 termination decision and a forthcoming CDC rulemaking to replace the regulation that the district court vacated.[1]

7.      On November 21, 2022, the States filed a motion to intervene in district court.  On December 9, 2022, the States moved to intervene in this Court, asserting that the district court now lacks jurisdiction to rule on the States' prior motion to intervene.  On December 12, 2022, the States filed an emergency motion for a stay pending appeal and an administrative stay.  On December 14, 2022, the district court issued a Minute Order deferring consideration of the States' district court intervention motion pursuant to Federal Rule of Civil Procedure 62.1.

## ARGUMENT

The States have not met the standard for intervention, either as of right or by permission.  Intervention requires a timely motion, but the States have been anything but timely.  More than one year ago, this Court rejected Texas's belated attempt to intervene on appeal, yet Texas and the other 18 putative intervenor

---

[1] The federal government also successfully sought a temporary stay of the district court's order until midnight on December 21, 2022, for the limited purpose of affording the government time "to move additional resources to the border and coordinate with stakeholders, including non-governmental organizations and state and local governments, to help prepare for the transition to Title 8 processing" that was "critical to ensuring that DHS can continue to carry out its mission to secure the Nation's borders and to conduct its border operations in an orderly fashion." D. Ct. Minute Order dated Nov. 16, 2022.  Had the government not secured that stay, DHS would have been forced to return to Title 8 processing immediately, without those critical preparations.

States did not attempt to intervene on remand at any point prior to the district court's grant of partial summary judgment — even after the CDC's April 2022 actions made it plain that the government would have no basis for seeking an emergency stay to preserve public-health orders that the CDC had determined were no longer necessary. Rather, the States waited until the eleventh hour to seek intervention on appeal. That belated motion should be denied, particularly because the States proffer no persuasive justification for their delay. The States' motion should also be denied because their interests are adequately represented on appeal and because they lack standing or any interest in the litigation that would justify intervention. Because the States are non-parties, and their motion to intervene on appeal should be denied, they have no basis for seeking a stay pending appeal or an administrative stay.

## I.      Intervention as of Right Should Be Denied.

Intervention as of right requires that "1) the application to intervene must be timely, 2) the party must have an interest relating to the property or transaction which is the subject of the action, 3) the party must be so situated that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect that interest, and 4) the party's interest must not be adequately represented by existing parties to the action." *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1322-23 (D.C. Cir. 2013). *See* Fed. R. Civ. P. 24(a)(2). This Court

has held that the putative intervenor must also demonstrate Article III standing. *Defenders of Wildlife*, 714 F.3d at 1323.

### A. The States' Motion Is Untimely and the States' Interests Are Adequately Represented

In assessing a motion to intervene, "timeliness is to be judged in consideration of all the circumstances, especially weighing the factor[] of time elapsed since the inception of the suit." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001). Where a party is seeking to intervene after the district court has entered judgment, the intervention motion "will usually be denied where a clear opportunity for pre-judgment intervention was not taken." *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999).

Here, plaintiffs filed their complaint almost two years ago, and the States could have sought intervention at any point prior to the district court's granting of partial summary judgment one month ago. Yet none of them did so — except for Texas, whose belated attempt to intervene in the prior appeal was rejected by this Court. The States could have sought to intervene when this Court remanded to the district court for further proceedings following the first appeal. They did not. The States could have sought to intervene after the CDC acted to terminate the Title 42 orders in April 2022. But again, they did nothing. Their belated attempt to intervene on appeal should be denied.

Furthermore, the federal government has adequately represented the States' interests in opposing the district court's judgment and will continue to do so on appeal. The States do not dispute that the federal government vigorously defended the Title 42 regulation and orders in opposing plaintiffs' motion for partial summary judgment. The States further acknowledge that the federal government has appealed the district court's adverse judgment and disagrees with the district court's ruling. *See* Mot. to Intervene 3-4. In similar circumstances, other courts have denied intervention. For example, the Eleventh Circuit affirmed the denial of a motion to intervene by the Florida Department of Environmental Protection because Florida's interests were adequately represented by the defendant U.S. Environmental Protection Agency, which was already "in this case … to defend the legality" of the agency's own actions. *Sierra Club v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007). *See also, e.g., Associated Industries of Alabama v. Train*, 543 F.2d 1159 (5th Cir. 1976).

The States' primary argument is that the federal government should have sought a stay pending appeal. Mot. to Intervene 4. But "[a] mere difference of opinion concerning the tactics with which litigation should be handled" does not amount to inadequate representation. *Jones v. Prince George's County*, 348 F.3d 1014, 1020 (D.C. Cir. 2003). A stay pending appeal is an "extraordinary remedy" that is not sought as a matter of course. *Cuomo v. U.S. Nuclear Regul. Comm'n*,

11

772 F.2d 972, 978 (D.C. Cir. 1985). An appealing party's decision not to seek such emergency equitable relief cannot be a basis for belated intervention by a third party claiming to be injured by the district court's judgment; such a ruling would open the door for intervention in countless cases where those who are indirectly affected by litigation disagree with an appellant's chosen litigation strategy.

Indeed, in other litigation, the putative State intervenors agreed with exactly that point. When the federal government appealed from the Louisiana district court's injunction barring enforcement of the CDC's termination order, *see supra* at 6-7, the federal government did not seek a stay of the injunction pending appeal. A putative intervenor moved to intervene and for a stay pending appeal. *See Louisiana v. CDC*, 5th Cir. No. 22-30303 (motion filed June 2, 2022). The government successfully opposed, arguing that the federal government's appeal would adequately represent the putative intervenor's interests even though the federal government had not sought a stay pending appeal. *Id.,* Appellants' Opp. to Mot. 1-2, 11-15 (filed June 13, 2022). Critically, the States-appellees in that case — the putative intervenors here — agreed that the putative intervenor had "failed to establish that Federal Defendants did not adequately represent their interests." *Id.*, Appellees' Consolidated Br. 94 (filed Aug. 31, 2022).

The States' similar objection to the federal government's anticipated motion to hold the appeal in abeyance (Mot. to Intervene 4) is likewise a dispute about appellate strategy that does not demonstrate inadequate representation of the States' interests. Granting the motion for intervention in these circumstances "would allow a third party to intervene not because an agency failed to move for additional review, but because the agency failed to move for review in the third party's preferred way." *Humane Soc'y v. Dep't of Agriculture*, --- F.4th ----, 2022 WL 17411257 at *2 (D.C. Cir. 2022) (Tatel, J., concurring). And the States' suggestion that abeyance is unexpected or inappropriate is misplaced: Most of the same States have elsewhere asserted that the Executive Branch's "typical practice" is to ask courts to "abey litigation regarding administrative actions it no longer supports until it can rescind or otherwise terminate those actions." Pet. for Cert. at 5, *Texas v. Cook County*, No. 22-234 (filed Sept. 9, 2022). The government is adhering to that "typical practice" in its anticipated motion that will ask this Court to abey litigation challenging already-rescinded orders until litigation over the rescission is complete.

The same considerations underscore why the States' attempted intervention is untimely. The States disagree with the federal government's decision not to seek a stay pending appeal. But to do so, the federal government would need to show that vacatur of the CDC's orders would cause irreparable harm and be

contrary to the public interest.  More than eight months ago, the CDC terminated its prior Title 42 orders, which it concluded were no longer required in the interest of public health, with termination to take effect May 23, 2022.  The States thus had notice of the CDC's views as of April 2022, and all putative State intervenors here brought suit to block that termination order.  It was obvious that the federal government could not claim irreparable harm from a court order compelling the very action the CDC had itself tried to take.  Nonetheless, the States took no action to intervene in this litigation until filing their belated motion following the district court's ruling.  Even assuming that a disagreement over a stay pending appeal could justify intervention, where the putative intervenor "has long been on notice that its interests were not the same" as the federal agency appellant on that issue, and "could have intervened" or sought to have done so earlier in the litigation, its "eleventh-hour motion to do so now is untimely."  *Humane Soc'y*, 2022 WL 17411257 at *2.

> **B.** **The States Lack Standing or an Interest Relating to the Property or Transaction That Is the Subject of the Action**

This Court has held that a party seeking to intervene as of right must demonstrate Article III standing just as a plaintiff would, by showing injury in fact, causation, and redressability.  *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).  The States argue that the district court's vacatur of CDC's Title 42 orders will result in the federal government's resuming full

immigration processing under Title 8, which will "result in an increase in daily border crossings" that, in turn, "will predictably cause the States to spend additional funds on law enforcement, education, and healthcare." Mot. for Stay 11-12. The States' argument fails to show that they have standing.[2]

The States' assertions about diffuse and widely shared societal costs resulting from a projected increase in the number of noncitizens do not constitute a "judicially cognizable" injury or a "legally protected" interest. *Raines v. Byrd*, 521 U.S. 811, 819 (1997). A State "has not suffered an injury in fact to a legally cognizable interest" when "a federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015). "To accept such a broad interpretation of the injury requirement would permit nearly all state officials to challenge a host of Federal laws." *Id*. For these reasons, the Sixth Circuit recently rejected three States' attempt to rely on the same theory of standing in a suit challenging DHS's immigration enforcement priorities, holding that the States could not establish standing merely because a federal policy had indirect effects on the States' own

---

[2] The States argue that even if they do not have standing to appeal, the federal government does. Mot. for Stay 9, 13. But the relevant question is whether the putative intervenors have demonstrated their own Article III standing, not whether the actual parties to the litigation have standing.

expenditures. *Arizona v. Biden*, 40 F.4th 375, 383-86 (6th Cir. 2022). Instead, a State generally must show that the challenged action "directly injure[s]" the State. *Id*. at 383; *see also, e.g., Florida v. Mellon*, 273 U.S. 12, 18 (1927) (holding that Florida lacked standing to challenge a federal inheritance tax that would cause the State financial harm by prompting the withdrawal of property from the State and diminishing the States' tax base, because any such harm was "at most, only remote and indirect").

Here, the vacatur of CDC's Title 42 rule and orders and resumption of full immigration processing under congressionally authorized immigration laws would not "directly injure the States" in a legally and judicially cognizable manner. *Arizona*, 40 F.4th at 383. This is not a situation where the federal government has required a State to act or to refrain from acting, determined how much federal funding it receives, or deprived it of a legal right. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565 (2019) (relying on federal funding). The resumption of full immigration processing under Title 8 merely tells federal officials how to enforce federal law in a field that the Constitution commits to the federal government. The indirect effects of that action on States do not qualify as "legally" and "judicially cognizable" injuries. *Raines*, 521 U.S. at 819. In our federal system, policies regulating people within a State will inevitably have derivative effects on the State's exercise of its own governmental powers. But the autonomy of the national

16

and state sovereigns, acting directly upon individuals "within their respective spheres," *Printz v. United States*, 521 U.S. 898, 920 (1997) (citation omitted), refutes the notion that a State has a judicially cognizable interest in avoiding the indirect effects of federal policies.

The States also contend they have enforceable rights under the preliminary injunction issued by the Louisiana district court. Mot. for Stay 9; *see supra* at 6-7. But it does not follow that the States have a cognizable Article III injury caused by the judgment in this case. Even assuming the States are correct that the effect of the other district court's injunction is impaired, that would not confer a cognizable injury related to this litigation. Whatever rights the States have in the Louisiana district court's injunction pertain only to the subject matter of that injunction, namely, the lawfulness of the CDC's termination order and the States' purported procedural right to block its enforcement because the CDC did not engage in notice-and-comment rulemaking before it issued. The district court here ruled on a different matter — the substantive validity of CDC's regulation and orders implementing its Title 42 authority and whether they were arbitrary or capricious.

Contrary to the States' assertion, no "doubly relaxed standard" for standing applies here. Mot. for Stay 13. The "special solicitude" in *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007), applied where Congress had enacted a statutory procedural right to challenge the EPA's rejection of a rulemaking petition, *id.* at

516-18, 519-20, and the State alleged an injury to its interest in preserving its "sovereign territory" — *i.e.*, "a particularized injury in its capacity as a [coastal] landowner," *id.* at 519, 522. The putative State intervenors in this case assert no similar sovereign interest here. Nor, contrary to the States' assertion (Mot. for Stay 13), are they asserting "procedural rights" under a statute governing the particular subject matter that are "special" and can be asserted "without meeting all the normal standards for redressability and immediacy," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992). The district court's ruling does not address a "procedural injury"; it instead addresses the substantive question whether the CDC's Title 42 regulation and orders were arbitrary and capricious. And the States' asserted injury that supposedly results from the district court's ruling — that the States will spend additional funds on law enforcement, education, and healthcare, Mot. for Stay 12 — does not create a "procedural" injury or implicate any "procedural right."

Even if the States' asserted injuries satisfied Article III, moreover, those asserted injuries are not "an interest relating to the property or transaction that is the subject of the action" as required for intervention under Federal Rule of Civil Procedure 24(a)(2). The subject of the action below concerns the public-health purposes of the Title 42 policy and whether the CDC's regulation and orders were arbitrary or capricious. The States' asserted injuries, by contrast, have nothing to

18

do with whether the Title 42 policy was arbitrary.  Rather, the States contend that they will be harmed by the application of ordinary Title 8 immigration law that will resume once the enforcement of the Title 42 order ends because Title 8's provisions will, in their view, be inadequate to address an anticipated surge in migration, and they point to costs that they may incur as a result.  That asserted interest has nothing to do with the legal or factual justification for Title 42 or whether the Title 42 policy was arbitrary or capricious.  Because the States' interests do not concern any rights or interests protected by the relevant provisions of Title 42 at issue in the district court, they do not satisfy the requirements for intervention under Rule 24(a)(2).  *Cf. Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013) ("Even if appellants enjoyed Article III standing— which they do not—they would still run afoul of prudential standing requirements, which could be thought similar to the concept embodied in Rule 24 that a proposed intervenor must have an interest 'relating to' the property or transaction at issue in the litigation.  Appellants lack prudential standing to enforce the terms of the Agreement because they were neither parties nor intended third-party beneficiaries to this contract.").

## II.    Permissive Intervention Should Be Denied

This Court should likewise deny the States' request for permissive intervention.  Mot. to Intervene 3.  Permissive intervention, which "is an inherently

discretionary enterprise," requires a timely motion, *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), but the States' motion is untimely for the reasons stated above.

## III. The Motion for a Stay Pending Appeal or Administrative Stay Should Be Denied

Federal Rule of Appellate Procedure 8 contemplates that a "party" may file a motion to stay a district court order pending appeal. *See* Fed. R. App. P. 8(a)(1), (2)(C), (E). "A party to litigation is one by or against whom a lawsuit is brought" or one who successfully intervenes. *Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (alteration and quotation marks omitted) (quoting *Party*, Black's Law Dictionary (8th ed. 2004)). This Court should deny the States' motion to intervene for the reasons noted above. The States are not parties to this litigation and should not be granted intervenor-party status; therefore, they may not file motions for extraordinary relief as if they were parties. *See International Union, United Auto., Aerospace & Agric. Implement Workers of Am. AFL-CIO v. Scofield*, 382 U.S. 205, 209 (1965) (noting that because the petitioner "was denied intervention and relegated to the status of an amicus curiae," and "an amicus is not a 'party' to the case," the petitioner was not "entitled to file a petition to review a judgment on the merits"); 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1923 (3d ed.) ("One … whose application to intervene is denied[] ordinarily may not appeal from any subsequent order in the proceeding.").

"[T]he fact that a decision against a defendant may practically affect a third party is not ordinarily enough for appellant status absent intervention or joinder in the trial court." *Defenders of Wildlife*, 714 F.3d at 1328 (alternations omitted). "[F]ailed intervenors may not appeal District Court actions to which they are not a party." *British Am. Tobacco*, 437 F.3d at 1240. If the non-party States cannot appeal the adverse judgment below, neither may they seek a stay pending appeal. Accordingly, the States' motion for stay pending appeal or an administrative stay should be denied.

**CONCLUSION**

For the foregoing reasons, the motion to intervene and the motion for a stay pending appeal should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

MATTHEW M. GRAVES
*United States Attorney*

SHARON SWINGLE

*/s/ Joshua Waldman*
JOSHUA WALDMAN
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Ave. NW*
*Washington, DC 20530*
*(202) 514-0236*
*joshua.waldman@usdoj.gov*

December 2022

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion satisfies the type-volume limitation in Rule 27(d)(2)(A) because it contains 5013 words. This motion also complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Joshua Waldman*
JOSHUA WALDMAN

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Joshua Waldman*
JOSHUA WALDMAN