ORAL ARGUMENT NOT YET SCHEDULED

---

**No. 22-5325**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

NANCY GIMENA HUISHA-HUISHA, on behalf of
herself and others similarly situated, et al.,

*Plaintiffs-Appellees*,

v.

ALEJANDRO MAYORKAS, et al.,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-100
Hon. Emmet G. Sullivan

---

**PLAINTIFFS-APPELLEES' OPPOSITION TO THE STATES' MOTION TO INTERVENE AS INTERVENOR-DEFENDANTS**

---

Stephen B. Kang
Cody Wofsy
Morgan Russell
My Khanh Ngo
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
skang@aclu.org
cwofsy@aclu.org
mrussell@aclu.org

Lee Gelernt
Omar Jadwat
Daniel A. Galindo
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
ojadwat@aclu.org
dgalindo@aclu.org

mngo@aclu.org

Bernardo Rafael Cruz
Adriana Cecilia Pinon
American Civil Liberties Union
Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
(713) 942-8146
brcruz@aclutx.org
apinon@aclutx.org

Karla M. Vargas
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516
(956) 787-8171

Blaine Bookey
Karen Musalo
Neela Chakravartula
Melissa Crow (D.C. Cir. Admission
Pending)
Center for Gender &
Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Robert Silverman
Irit Tamir
Oxfam America
226 Causeway Street, Suite 500
Boston, MA 02115
(617) 482-1211

Scott Michelman
Arthur B. Spitzer
American Civil Liberties Union
Foundation of the District of
Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Tamara F. Goodlette
Refugee and Immigrant Center for
Legal Education and Legal
Services (RAICES)
5121 Crestway Drive, Suite 105
San Antonio, TX 78239
(210) 960-3206

*Counsel for Plaintiffs-Appellees*

# GLOSSARY

| Abbreviation | Description |
|---|---|
| *CDC* | Centers for Disease Control and Prevention |
| *Intervention Mot.* | States' Notice Regarding Pending Motion to Intervene and Alternative Renewed Motion to Intervene (Dec. 9, 2022). |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and Cir. R. 26.1, Counsel for Plaintiffs-Appellees state that they do not have parent corporations.  No publicly held corporation owns 10 percent or more of any stake or stock in any of the Counsel for Plaintiff-Appellees.

**INTRODUCTION**

The States' effort to intervene in this longstanding Title 42 challenge should be denied.

First, the States are wrong that their pending district court intervention motion was "transferred by operation of law" to this Court once Defendants appealed. Perhaps recognizing that their district court motion is not before this Court, the States alternatively request to intervene on appeal, but such a motion is subject to a heightened standard. *See Humane Soc'y of the U.S. v. U.S. Dep't of Agric*., ___ F. 4th ___, 2022 WL 17411257, at *1 (D.C. Cir. Dec. 5, 2022) (Tatel, J., concurring in denial of intervention). The States cannot satisfy even the regular intervention standard, much less a heightened standard.

Second, the States lack standing. This Court has repeatedly rejected similar theories of standing based on conjecture and downstream consequences of the federal government's policies. *See, e.g.*, *Arpaio v. Obama*, 797 F.3d 11, 14 (D.C. Cir. 2015) (immigration challenge).

Third, even if they had standing, the States' "eleventh-hour motion" is "untimely." *Humane Soc'y*, 2022 WL 17411257, at *2. Indeed, in October 2021, one of the proposed intervenors here, Texas, sought intervention before this Court and *expressly* stated that it believed the federal government was not adequately representing its interests in this Title 42 litigation. That motion was denied under

1

the heightened standard applicable to intervention on appeal, yet none of the States here sought intervention below *for a year*, until the district court entered summary judgment, forcing extraordinarily expedited briefing, precluding factual development, and creating the threat of an administrative stay.

Nor can the States establish inadequate representation. Their argument below relied on the prediction that Defendants would not appeal—but they now have. And these very States took the position in their own Title 42 litigation that a putative intervenor was adequately represented by the federal government despite the government's choice not to seek a stay pending appeal.

## BACKGROUND

This Court has previously described the Title 42 policy and its devastating impact on noncitizens. *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 725-26, 733-35 (D.C. Cir. 2022). In short, CDC established the Title 42 policy in March 2020, purportedly as an emergency measure to address COVID-19 in the earliest days of the pandemic. Defendants have since used it to expel noncitizens arriving at the border "without allowing them to apply for asylum"—forcing them to "walk the plank" into extraordinary danger of murder, rape, assault, and kidnapping. *Id*. at 726, 733.

In January 2021, Plaintiffs initiated this challenge to the Title 42 policy. In September 2021, the district court preliminarily enjoined the application of the

Title 42 policy on the ground that the policy was not statutorily authorized, and

Defendants appealed and obtained a stay.

In October 2021, Texas moved to intervene before this Court. Motion to

Intervene as Intervenor-Defendant, *Huisha-Huisha v. Mayorkas*, No. 21-5200

(D.C. Cir. Oct. 11, 2021). Importantly, Texas stated that it "no longer believes

Defendants can or will adequately represent the State's significant interests in this

case." *Id.* at 10. Plaintiffs responded that Texas should not be allowed to

intervene for the first time on appeal, noting Texas's reliance on a number of

untested and unfounded factual assertions regarding the State's claimed injuries.

*See generally* Plaintiffs-Appellees' Opposition, *Huisha-Huisha*, No. 21-5200 (D.C.

Cir. Oct. 15, 2021). This Court denied Texas's motion, finding Texas had not

satisfied the heightened "standards for intervention on appeal." Order at 1, *Huisha-*

*Huisha*, No. 21-5200 (D.C. Cir. Oct. 26, 2021).

Ultimately, this Court affirmed the preliminary injunction in part and

remanded for resolution of the merits. The Court also pointedly noted that the

Title 42 policy appeared to be a "relic" and that on remand the district court should

address "Plaintiffs' claim that the § 265 [Title 42] Order is arbitrary and

capricious," which the district court had not yet considered. *Huisha-Huisha*, 27

F.4th at 734-35; *see also id.* at 735 (observing that the policy appeared not to serve

"any purpose").

3

CDC subsequently issued an order on April 1, 2022, terminating all prior Title 42 orders and seeking to end the policy.  A number of States—including all the proposed intervenors here—challenged CDC's termination order in Louisiana. The court there preliminarily enjoined CDC's termination order on notice-and-comment grounds, *Louisiana v. CDC*, __ F. Supp. 3d ___, 2022 WL 1604901 at *23 (W.D. La. May 20, 2022).  The federal government appealed, but did not seek a stay, and the appeal remains pending.  No. 22-30303 (5th Cir.).

On May 23, 2022, this Court remanded this case to the district court.  The litigation proceeded without any intervention attempt by the States.  On August 15, 2022, Plaintiffs filed a motion for partial summary judgment on arbitrary-and-capricious grounds, of which the federal government specifically notified the States the next day, Notice at 7 n.2, ECF No. 154, *Louisiana*, No. 22-885 (W.D. La. Aug. 16, 2022), and which the district court granted on November 15, 2022, ECF No. 165.[1]

On Defendants' unopposed motion, the district court stayed its judgment for five weeks, to give Defendants time to transition from the Title 42 policy to normal "Title 8" immigration processing.  The stay is set to end at 12:01 a.m., December 21, 2022.

---

[1] Except where otherwise noted, ECF citations are to proceedings below, and page numbering refers to ECF pagination.

On November 21, 2022, the States filed a motion to intervene in the district court—over a year after Texas's attempt to intervene on appeal was denied, nearly eight months after CDC sought to end the Title 42 policy, and after the district court granted summary judgment. A central basis for the States' motion was the prediction that Defendants would not appeal the district court's judgment. ECF No. 168 at 20.

On December 7, 2022, Defendants filed their notice of appeal. On December 9, 2022, the States filed a "Notice" asking this Court to treat their district court intervention motion as having been automatically transferred to this Court, styling it in the alternative as a motion to intervene on appeal. States' Notice Regarding Pending Motion to Intervene and Alternative Renewed Motion to Intervene ("Intervention Mot."). On December 12, 2022, the States filed a motion in this Court to stay the district court's judgment and injunction.

## ARGUMENT

## I.  THE STATES' MOTION TO INTERVENE IS SUBJECT TO A HEIGHTENED STANDARD.

The States are wrong that their district court motion is pending before this Court. Most circuits have held that the filing of a notice of appeal deprives district courts of jurisdiction to decide an intervention motion, *see* Intervention Mot. 2, though this Court has not decided this question, *see Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1256 (D.C. Cir. 1999). But even if

5

the district court lost jurisdiction over the intervention motion, the States cite no authority whatsoever for their novel assertion that the motion "was transferred by operation of law to this Court" once Defendants appealed. Intervention Mot. 3.

Indeed, none of their cited cases suggest that an intervention motion filed below was automatically "transferred" to the court of appeals, and none adjudicated the district court motion in the first instance. Each decision instead *reviewed* a ruling below and held that the district court lacked jurisdiction to grant intervention once an appeal had been filed. *Taylor v. KeyCorp*, for example, involved a motion to intervene after final judgment. 680 F.3d 609, 616 (6th Cir. 2012). The court of appeals affirmed the district court's denial of intervention because it had lost jurisdiction once the appeal was filed. *Id*. at 617. Yet on the States' theory, the circuit in that case should instead have *itself entertained* the intervention motion because it was, in their view, "transferred by operation of law" to the Circuit.

Accordingly, the only motion concerning intervention currently pending before this Court is the States' alternative request to intervene on appeal. Intervention Mot. 3-5. This Court will "grant motions to intervene at the appellate stage only in 'exceptional case[s] for imperative reasons.'" *Humane Soc'y*, 2022 WL 17411257, at *1 (quoting *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1552 (D.C. Cir. 1985) (per curiam)). While here the

6

States did seek intervention first in district court, *cf. Donovan*, 771 F.2d at 1552, the same considerations underlying that demanding standard apply because the States waited until the last minute to seek intervention below. "It would be entirely unfair, and an inexcusable waste of judicial resources, to allow a potential intervenor to lay in wait until after the parties and the trial . . . court[] have incurred the full burden of litigation before deciding whether to participate in the judicial proceedings," *id*. at 1553, as the States did here, *see infra*.

Regardless, the States' motion fails under any standard.

## II.    INTERVENTION SHOULD BE DENIED.

### A. The States Lack Standing.

Standing is a prerequisite for intervention, even for Defendant intervenors. *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013). Because the States cannot establish the required "showing of injury-in-fact, causation, and redressability," *id*., their attempt to "influence the course of litigation" based on "philosophic" objections should be rejected, *id*. at 195 (Silberman, J., concurring).

***First***, the States' standing theories are inconsistent with this Court's precedents. Their core claim is that the replacement of Title 42's public health expulsions with statutory immigration procedures will lead to more undocumented noncitizens in these States, imposing downstream costs sometime in the future.

7

ECF No. 168 at 21-24. "If such allegations were routinely accepted as sufficient to confer standing, courts would be thrust into a far larger role of judging governmental policies than is presently the case, or than seems desirable." *Arpaio*, 797 F.3d at 25 (cleaned up).

In *Arpaio*, this Court rejected a strikingly similar argument alleging downstream increases in crime, holding that "the likelihood of any injury actually being inflicted is too remote to warrant the invocation of judicial power." *Id*. at 22 (cleaned up); *see also Pennsylvania v. Kleppe*, 533 F.2d 668, 672 (D.C. Cir. 1976) (downstream State fiscal impacts that are "an incidental result of the challenged action" insufficient for standing). As Chief Judge Sutton recently said in an immigration case rejecting standing: "Are we really going to say that any federal regulation of individuals . . . that imposes peripheral costs on a State creates a cognizable Article III injury for the State to vindicate in federal court? If so, what limits on state standing remain?" *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022).

The States attempted below to distinguish *Arpaio* on the ground that the challenged policies there did not apply to those noncitizens who would supposedly migrate as a result of the policy. ECF No. 177 at 17. But the Court rejected standing even "were we to ignore" that "disconnect," because the theory that the

policy change would cause *anyone* to come, or impose *any* costs, amounted to "speculation."  797 F.3d at 20-22.  So too here.[2]

The States also lean heavily on two district courts in the Fifth Circuit that found State standing to challenge the termination and limitation of Title 42.  ECF No. 168 at 20.  But the seemingly limitless state standing doctrine those decisions espoused is an outlier.  *See Louisiana*, 2022 WL 1604901, at *13 (noting that "*Arizona v. Biden* is inconsistent with" the Fifth Circuit's approach).[3]

**Second**, even if such tangential costs could establish standing under this Court's cases, the States' evidence falls short.

*Title 42's Impact on Migration.*  It is speculative at best that ending the policy will increase migration, much less increase it beyond the short term.  Even assuming that Title 42's cessation "might" impact "the complex decisions made by non-citizens" before "risk[ing] life and limb to come here," "so, too, might the myriad economic, social, and political realities in the United States and in foreign nations."  *Arpaio*, 797 F.3d at 21; *see also* ECF No. 118-23 at 1 (expert

---

[2] The States also suggested below that *Arpaio* was overruled by *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019).  But that case involved "direct loss of federal funds that are distributed based on state population" unlike the indirect and speculative harms asserted here.  *Arizona*, 40 F.4th at 386.

[3] The Supreme Court has granted certiorari to assess, *inter alia*, the Fifth Circuit's application of state standing in an immigration case.  *United States v. Texas*, No. 22-58 (argued Nov. 29, 2022).

declaration).  And the States' evidence is flimsy at best.  They lean heavily on a

deposition of one of the defendants, Raul Ortiz, but all his testimony says is that a

change in U.S. government ECF operations had an impact, as filtered through "social

media," "word of mouth," and "smuggling organizations," on the specific parts of

the border where noncitizens sought to cross.  ECF No. 168-12 at 5.  That tenuous

claim does nothing to show that Title 42's cessation will draw more migrants to the

country.[4]

Moreover, the premise of this argument—that Title 42 is a more effective

deterrent of migration than statutory immigration procedures—is highly suspect.

Because Title 42 generally involves expulsion to Mexico and carries no legal

consequences, noncitizens may seek safety by "cross[ing] the border multiple

times, sometimes 10 times or more."  *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d

146, 176 (D.D.C. 2021) (cleaned up).  By contrast, Title 8 procedures involve

removal backed by significant criminal and civil penalties for those who

unlawfully reenter—which the federal government has stated "has a greater

deterrent effect than expelling a migrant to Mexico under Title 42."  Opposition to

Motion for TRO at 1, ECF No. 27, *Louisiana*, No. 22-885 (W.D. La. Apr. 22,

---

[4] The States repeatedly warn of a "possible" increase in border crossings to
18,000 per day—although the newspaper articles they cite indicate this was a
"worst-case scenario" in May for "planning" purposes, *see* ECF No. 168-4 at 81,
and given seasonal migration fluctuation officials are now "forecasting fewer"
arrivals, Rogers Decl., Doc. No. 1977323 at 14, 19.

2022).  Indeed, the States have emphasized the high number of noncitizens arriving at the border *while Title 42 is in effect*, which only shows the policy has not been deterring migration.

And any impact from ceasing Title 42 expulsions of *children* (namely alleged educational costs) is even more speculative, because unaccompanied children are already exempted from Title 42, and a large majority of children arriving with parents have been processed under Title 8 for well over a year.  *See Huisha-Huisha*, 560 F. Supp. 3d at 175.

*Increased Costs to the States.*  Even if in the *short-term* more noncitizens obtain entry for days or weeks as the government transitions to ordinary Title 8 processes, the impact on costs like education and healthcare is speculative.  The States offer no evidence that a brief spike would increase costs.

Indeed, it is highly speculative that any additional noncitizens who arrive will create the costs the States complain of, because they may not remain in the country.  Which Title 8 procedures will be used, and what the outcome of those procedures will be (including deportation), involve many contingencies and intervening discretionary decisions not at issue here—rendering the States' standing even more speculative.  *See California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (rejecting "difficult to establish" standing theory that "depends upon the decision of an independent third party") (cleaned up); *Clapper v. Amnesty Int'l*

11

*USA*, 568 U.S. 398, 412-13 (2013) (rejecting standing theory predicated on speculation regarding government's choices among its legal authorities).

Moreover, the States complain about *undocumented* immigrants, but Title 8 procedures (unlike Title 42) can lead to immigration status or result in deportation. It is speculative that Title 8 processing will lead to more long-term presence of undocumented noncitizens, rather than more noncitizens receiving lawful status or fewer noncitizens present due to removal orders.

Similarly, it is "pure speculation," *Arpaio*, 797 F.3d at 22, to assume a negative impact on the States' budgets, regardless of how many migrants remain in their particular states. The States rely on general statistics, but costs, like crime, "are affected by numerous factors, such as the local economy, population density, access to jobs, education, and housing, and public policies that directly and indirectly affect" access to and use of government services. *Id*.

The States' remaining ancillary harms are likewise speculative or incorrect. The States say that they spend money to rescue migrants entering between ports, ECF No. 168 at 22-23, but Title 42 bans access to regular processing at ports of entry, which may *encourage* noncitizens to cross between ports—and again, Title 42 leads to *repeated* crossings. The States point to the cost of healthcare provided to noncitizens in ICE custody, *id.* at 23-24, but how Title 42's end might impact the number of noncitizens in ICE *custody* (rather than released or deported) is subject to

12

independent decisions by federal authorities as to whether, and where, to detain noncitizens, *see California*, 141 S. Ct. at 2117.

The States assert that this Court should accept these theoretical harms because a district court in Louisiana accepted them, and the federal government did not submit contrary evidence in that case. Intervention Mot. 4 n.3. But Plaintiffs here were not parties to that case. Moreover, as explained below, the States' delay in seeking intervention in this case, and the threat of seeking an administrative stay in the event of delays, deprived Plaintiffs of any opportunity to probe the States' evidence. That prejudice is another reason to deny intervention.[5] And even the Louisiana district court declined to credit the States' speculative allegations of increased criminal activity. *Louisiana*, 2022 WL 1604901, at *15.

Finally, the States argue in the alternative that they need not put forth any evidence, because they have standing based merely on the fact that the preliminary injunction in *Louisiana* would be rendered moot if the district court's ruling in this case is upheld. ECF No. 177 at 11. But no amount of baseless accusations of

---

[5] Below, the States suggested that the loss of this opportunity did not matter because the district court was required to accept the States' assertions as true. ECF No. 177 15-16. That is wrong. While intervention can "usually" be decided based on allegations and intervenors' evidence, courts can of course consider "any responses" and contrary evidence. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). And courts have discretion to order jurisdictional discovery regarding standing; indeed, these States are currently engaged in such discovery elsewhere. *See Arizona v. Garland*, No. 22-1130 (W.D. La.). Here, moreover, the States' assertions are especially questionable.

"collusion" alters the reality that the *Louisiana* case and this case address entirely different CDC orders. The *Louisiana* injunction challenges CDC's memorandum terminating the Title 42 policy for failure to engage in notice-and-comment rulemaking; here, the district court found the *underlying* policy unlawful. Abiding by the district court's judgment here does not involve enforcing the termination memorandum. The States insist they have standing to defend the "spirit" of their injunction. *Id*. at 14. But they cite nothing showing that the "spirit" of their injunction can confer standing.

*Special State Solicitude*: The States' claim to "special solicitude in the standing analysis" under *Massachusetts v. EPA*, 549 U.S. 497, 519-20 (2007), is unavailing. This Court has emphasized the "uniqueness" of the circumstances in *Massachusetts* and its "limited holding." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 476-77 (D.C. Cir. 2009); *see Arizona*, 40 F.4th at 385-86 (rejecting application of *Massachusetts* because "indirect fiscal burdens" caused by federal immigration policy are not "uniquely sovereign harm[s]"). And unlike here, *Massachusetts* did not involve *intervention* as a *defendant*. In any event, *Massachusetts* does not alter the requirement to show a concrete injury in fact, which the States have not shown. *See Ctr. for Biological Diversity*, 563 F.3d at 477.

14

**B. The States Are Not Entitled To Intervene As Of Right Even If They Have Standing.**

To intervene as of right, the States must additionally satisfy "all four elements" of Federal Rule of Civil Procedure 24(a): "timeliness, interest, impairment of interest, and adequacy of representation." *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1017, 1019 (D.C. Cir. 2003).[6]

**1. The States' motion is untimely.**

The States' intervention motion was untimely, and therefore "intervention must be denied" regardless of whether the States satisfy any of the other intervention factors. *Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (cleaned up); *United States v. Brit. Am. Tobacco Australia Servs.*, 437 F.3d 1235, 1239 (D.C. Cir. 2006) ("Courts reach the other elements of Rule 24(a) only after the threshold question of timeliness.").

*First*, and critically, the State of Texas—one of the putative intervenors—claimed over a year ago before this Court that it "no longer believe[d] Defendants can or will adequately represent the State's significant interests in this case." Texas Intervention at 10, *Huisha-Huisha v. Mayorkas*, No. 21-5200 (D.C. Cir. Oct. 11, 2021). This Court denied Texas's 2021 motion because Texas had not met

---

[6] For the reasons that the States lack standing, they also lack a legally protectable interest that would be impaired under Rule 24(a). *See supra*.

"the standards for intervention *on appeal*," Order at 1, *Huisha-Huisha*, No. 21-5200 (D.C. Cir. Oct. 26, 2021) (emphasis added), citing *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, which requires a heightened showing of "exceptional circumstances supported by imperative reasons," 771 F.2d 1551, 1553 (D.C. Cir. 1985). Given the emphasis on the *appellate* intervention standard, the States' next step should have been to seek to intervene in district court, where that standard does not apply. Yet neither Texas nor any other State did so, even though all were aware of and had cited the *Huisha-Huisha* litigation in their court filings in other venues.[7] Indeed, the States were notified of Plaintiffs' summary judgment motion the day after it was filed in August 2022.[8] Yet they took no action in this case until *after* summary judgment—more than a year after this Court denied intervention on appeal.

Thus, the States "knew or should have known that" that their asserted interests might be "affected by the litigation" for over a year before their motion in district court, if not before. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (cleaned up). And they obviously have been aware of their own

---

[7] *See, e.g.*, Memorandum in Support of Motion for Preliminary Injunction at 38, *Louisiana v. CDC*, No. 22-885 (W.D. La. Apr. 14, 2022), ECF No. 13-1; Amicus of Arizona, *et al*. at *2, *Texas v. United States*, No. 21-40618 (5th Cir. Aug. 31, 2021), 2021 WL 4126281.

[8] Notice at 7, *Louisiana*, No. 22-885 (W.D. La. Aug. 16, 2022), ECF No. 154; *see also id.* ECF Nos. 155, 159.

view regarding the "potential inadequacy of representation" for as long.  *See*

*Amador Cnty.*, 772 F.3d at 904-05 (explaining that Tribe's statement in a 2005

brief "that '[t]he presence of the United States in this case does not fully protect the

Tribe's interests'" demonstrated Tribe's view of perceived inadequacy); *see also*

*Humane Soc'y*, 2022 WL 17411257, at *2 (noting intervenors had "long been on

notice that [their] interests were not the same as the" federal government's); *cf.*

*Brit. Am. Tobacco*, 437 F.3d at 1239 (where party "had already intervened once in

the suit" on narrower issue, its "dilatory conduct" in not sooner seeking broad

intervention was "all the more inexcusable").

    *Second*, on April 1, 2022, CDC sought to end the Title 42 policy, explaining

that it was no longer justified in the interest of public health.  CDC's conclusion

should have alerted the States that Defendants might not keep the program in place

for as long as the States wished; indeed, the States sued to oppose the termination.

*Louisiana*, 2022 WL 1604901, at *1.  Yet the States still declined to seek

intervention before the district court below.  *See Amador Cnty.*, 772 F.3d at 905

(explaining that the Tribe "all but admit[ted]" expectation of government's

inadequate representation when it "stat[ed] it had 'earlier concerns about a

potential conflict of interest in the United States' representation'").

    The States emphasize Defendants' choice to seek a five-week stay, rather

than a stay pending appeal.  Intervention Mot. 3-4.  But the States clearly saw a

need to intervene long before that decision was announced, given Texas's motion

to intervene on appeal before this Court, and the States' lawsuit to enjoin the

termination of Title 42 in Louisiana.  Indeed, all the States can say is that

Defendants' stay decision "*underscored* the inadequacy of Defendants'

representation of the States' interests."  *Id*. (emphasis added).  But "courts measure

elapsed time from when the *potential* inadequacy of representation comes into

existence," not when the inadequacy is *underscored.  Amador Cnty.*, 772 F.3d at

904 (emphasis added, cleaned up); *see Illinois v. City of Chicago*, 912 F.3d 979,

985 (7th Cir. 2019) ("we measure from when the applicant has reason to know its

interests *might* be adversely affected, not from when it knows for certain that they

will be").  Otherwise, intervenors could always justify tardy motions by pointing to

recent litigation developments as "underscoring" their longstanding concerns.

The States' unjustified delay prejudices Plaintiffs, the Court, and the public.

Had the States sought to intervene earlier, their motion could have been decided in

an orderly manner, and (if denied) the States could have immediately appealed.

*See Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001).  Instead, the States

threaten prejudice and disruption by jamming intervention proceedings, as well as

stay proceedings before this Court and potentially the Supreme Court, into the five-

week period the district court granted to facilitate the government's transition to

regular immigration processing.  *See NAACP v. New York*, 413 U.S. 345, 369

18

(1973) (finding intervention untimely where it created "potential for seriously disrupting the State's electoral process").  The States' delay has resulted in extraordinarily expedited stay briefing and likely emergency briefing on administrative stays, which may keep the Title 42 policy, and the harms it inflicts, in place.

Moreover, the States' standing arguments are not only legally flawed, but also factually disputed.  The States knew that Plaintiffs intended to dispute their standing facts, given that Plaintiffs opposed Texas's earlier intervention request by noting the unfairness of denying them any opportunity "to gather and submit evidence in opposition to Texas' arguments."  Plaintiffs-Appellees' Opposition at 20-21, *Huisha-Huisha*, No. 21-5200 (D.C. Cir. Oct. 15, 2021).  Yet because the States waited until after judgment below, Plaintiffs had to agree to an expedited schedule in district court with no opportunity to develop the record given the threat that, otherwise, the States would seek administrative stays.  The States should not be rewarded for their unjustified delay.

The States contend that their motion was timely because they filed shortly after judgment was entered.  Not so.  "Timeliness is to be determined from *all the circumstances*."  *NAACP*, 413 U.S. at 366 (emphasis added).  Where the circumstances before judgment made it "obvious that there was a strong likelihood that" the parties' interests would diverge, a post-judgment motion is untimely.  *Id*.

19

at 360, 367.  The States' cases are not to the contrary.  In addition to other significant differences, in each case intervention was sought "*as soon as it became clear*" that the intervenors' interests diverged from those of the existing parties. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (emphasis added) (allowing intervention where there was previously "no reason for [class member] to suppose" class counsel would not appeal); *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1010-11 (2022) (intervention of state attorney general to defend state law implicated "sovereignty concerns," *Humane Soc'y*, 2022 WL 17411257, at *2, and no disruption would result).  Here, the States had themselves raised "multiple early warnings of danger" to their interests for over a year, yet declined to timely intervene.  *Brit. Am. Tobacco*, 437 F.3d at 1239.  "An eleventh-hour motion to do so now is untimely."  *Humane Soc'y*, 2022 WL 17411257, at *2.

## 2. The States' interests are adequately represented.

Even if the States' motion were timely, Defendants are adequately representing their purported interests.  Below, the entire premise of the States' adequacy argument was their belief that Defendants would not appeal the district court's orders.  ECF No. 168 at 19-20, 25-26.  But Defendants have now appealed. ECF No. 179.

The States have also emphasized that one of their central reasons for intervention is to preserve CDC's regulatory interpretation of its expulsion powers.

20

ECF No. 168 at 24-25 (invoking "quasi-sovereign interest" in defending

regulation).  But Defendants share that interest.  *See* ECF No. 179; *cf. Bldg. &*

*Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)

(upholding intervention denial where intervenor "offered no argument not also

pressed" by the government).

　　　Any disagreement the States may have with Defendants' means of achieving

this shared goal "boils down to just another dispute over litigation tactics," which

fails to support intervention.  *See Jones*, 348 F.3d at 1020.  For example, the States

disagree with Defendants' decision to seek a five-week stay rather than a stay

pending appeal.  Intervention Mot. 4.  But they identify no case that finds

inadequacy on that basis, particularly where Defendants are pursuing an appeal.

As in *Humane Society*, the States are arguing for intervention "not because an

agency failed to move for additional review, but because the agency failed to move

for review in the third party's preferred way."  2022 WL 17411257, at *2.

　　　Indeed, the States' position here is at odds with their position in their own

lawsuit in *Louisiana*.  There, the district court entered a nationwide preliminary

injunction forbidding CDC from rescinding the Title 42 policy.  *See* 2022 WL

1604901, at *17-20, 23.  The federal government appealed but did not seek a stay

of any length.  *See* Notice of Appeal, *Louisiana*, No. 22-885 (W.D. La. May 20,

2022), ECF No. 92.  An immigration nonprofit moved to intervene and for a stay

21

pending appeal, arguing that the injunction should be narrowed to the Plaintiff States.  *See* Motion for Stay, *Louisiana*, No. 22-30303 (5th Cir. June 2, 2022).  The federal government opposed intervention, arguing that it was sufficiently representing the immigration nonprofit's interests.  Federal Government's Response to Proposed Intervenor's Opening Brief at 11, 13-14, *Louisiana*, No. 22-30303 (5th Cir. Aug. 24, 2022).  Notably, although the government had not sought a stay (even a short one), the States "agree[d] with" the government's intervention arguments without reservation.  States' Consolidated Answering Brief at 111, *Louisiana*, No. 22-30303 (5th Cir. Aug. 31, 2022).  Just as in *Louisiana*, Defendants' choice to appeal but not seek a stay pending appeal is not a basis for intervention.

**C. Permissive Intervention Is Not Warranted.**

Finally, permissive intervention under Fed. R. Civ. P. 24(b) should be denied, for all the reasons stated above.  This Court has "wide latitude" to decide whether such intervention is appropriate.  *In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 980 (D.C. Cir. 2013).  Importantly, permitting the States "to lay in wait" throughout this litigation "would be entirely unfair."  *See Donovan*, 771 F.2d at 1553.  Sound discretion weighs against intervention.

## CONCLUSION

This Court should deny the motion to intervene.

Dated: December 14, 2022

Stephen B. Kang
Cody Wofsy
Morgan Russell
My Khanh Ngo
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770

Bernardo Rafael Cruz
Adriana Cecilia Pinon
American Civil Liberties Union
Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
(713) 942-8146
brcruz@aclutx.org
apinon@aclutx.org

Karla M. Vargas
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516
(956) 787-8171

Blaine Bookey
Karen Musalo
Neela Chakravartula
Melissa Crow (D.C. Cir. Admission
Pending)
Center for Gender &
Refugee Studies

Respectfully Submitted,

/s/ Lee Gelernt
Lee Gelernt
Omar Jadwat
Daniel A. Galindo
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
ojadwat@aclu.org
dgalindo@aclu.org

Robert Silverman
Irit Tamir
Oxfam America
226 Causeway Street, Suite 500
Boston, MA 02115
(617) 482-1211

Scott Michelman
Arthur B. Spitzer
American Civil Liberties Union
Foundation of the District of
Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Tamara F. Goodlette
Refugee and Immigrant Center for
Legal Education and Legal
Services (RAICES)

23

200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

5121 Crestway Drive, Suite 105
San Antonio, TX 78239
(210) 960-3206

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This motion response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(1)(E) and (2)(A) because:

1. It contains 5,157 words.

2. It complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Professional Plus 2019 in 14-point Times New Roman font.

/s/ *Lee Gelernt*
Lee Gelernt

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the DC Circuit by using the CM/ECF system. A true and correct copy of the foregoing has been served via the Court's CM/ECF system on all counsel of record.

/s/ *Lee Gelernt*
Lee Gelernt

25