No. 22-5325
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

NANCY GIMENA HUISHA-HUISHA, on behalf of
herself and others similarly situated, et al.,

*Plaintiffs-Appellees*,

v.

ALEJANDRO MAYORKAS, et al.,

*Defendants-Appellants*.
_____

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-100
Hon. Emmet G. Sullivan
_____

**PLAINTIFFS-APPELLEES' OPPOSITION TO
DEFENDANTS' MOTION TO VACATE**
_____

Stephen B. Kang
Cody Wofsy
Morgan Russell
My Khanh Ngo
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774
skang@aclu.org
cwofsy@aclu.org
mrussell@aclu.org
mngo@aclu.org

Lee Gelernt
Omar Jadwat
Daniel A. Galindo
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
ojadwat@aclu.org
dgalindo@aclu.org

Adriana Cecilia Pinon
American Civil Liberties Union
Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
(713) 942-8146
apinon@aclutx.org

Karla M. Vargas
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
(956) 787-8171
karla@texascivilrightsproject.org

Melissa Crow
Center for Gender &
Refugee Studies
1121 14th Street, NW, Suite 200
Washington, DC 20005
(202) 355-4471
crowmelissa@uchastings.edu

Blaine Bookey
Karen Musalo
Neela Chakravartula
Center for Gender &
Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877
bookeybl@uchastings.edu

Irit Tamir
Oxfam America
226 Causeway Street, Suite 500
Boston, MA 02115
(617) 482-1211

Scott Michelman
Arthur B. Spitzer
American Civil Liberties Union
Foundation of the District of
Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Maria R. Osornio
Refugee and Immigrant Center for
Legal Education and Legal
Services (RAICES)
5121 Crestway Drive, Suite 105
San Antonio, TX 78201
(210) 960-3206

*Counsel for Plaintiffs-Appellees*

The government moves to vacate the district court's judgment in this case and remand with instructions to dismiss the suit as moot. Plaintiffs agree in part: The case is moot, but vacatur is not warranted. Therefore, the Court should remand with instructions to dismiss the remaining claims as moot, but the district court's partial judgment should remain in place.

As the government notes, the end of the Department of Health and Human Services' (HHS) Public Health Emergency has terminated the Centers for Disease Control and Prevention's (CDC) Title 42 Order, halting the expulsions challenged in this case. Mot. 9. Plaintiffs agree that the case is therefore moot. The Court should remand to the district court with instructions to dismiss the remaining, undecided claims (which are currently stayed pending this appeal) as moot.

However, vacatur of the district court's partial judgment is not warranted under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). It is the government's burden to show "equitable entitlement to the extraordinary remedy of vacatur" of a court judgment. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). And such "vacatur is usually inappropriate when 'the party seeking relief from the judgment below caused the mootness by voluntary action.'" *Am. Bar Ass'n v. F.T.C.*, 636 F.3d 641, 649 (D.C. Cir. 2011) (quoting *U.S. Bancorp*, 513 U.S. at 24). That is the case here: The federal government, which lost below and appealed, caused the mootness by ending the Public Health

1

Emergency. The government was not required to end the Public Health Emergency when and how it did; that was a policy choice rather than an automatic result of any public health or scientific objective measure set forth in the Public Health Emergency declaration.[1] Vacatur is therefore presumptively unwarranted. *See, e.g.*, *I.A. v. Garland*, No. 20-5271, 2022 WL 696459, at *1 (D.C. Cir. Feb. 24, 2022) (rejecting vacatur where agencies replaced a challenged Rule, mooting the case).

On the facts of this case, Defendants cannot demonstrate "equitable entitlement" to vacatur. *U.S. Bancorp*, 513 U.S. at 26. They are in no way harmed by the existence of a judgment against the now-defunct Title 42 CDC *orders*. To the contrary, Defendants explain that "[t]here is no reasonable likelihood that the CDC will issue another Title 42 emergency order affecting processing at the border because of a serious public health danger arising from COVID-19 in the foreseeable future." Mot. 12. And they do not attempt to explain how the district court's judgment that the orders were arbitrary and capricious *in their reasoning*

---

[1] *See* OMB, Statement of Administration Policy (Jan. 30, 2023), https://perma.cc/FE83-MXDE (describing the government's plan to end the Public Health Emergency); HHS, *Determination That A Public Health Emergency Exists* (Jan. 31, 2020), https://aspr.hhs.gov/legal/PHE/Pages/2019-nCoV.aspx; HHS, *Renewal Of Determination That A Public Health Emergency Exists* (Feb. 9, 2023), https://aspr.hhs.gov/legal/PHE/Pages/COVID19-9Feb2023.aspx.

2

would impair "future relitigation," Mot. 18, about a hypothetical, future CDC order, which would have its own justifications.

Rather, their principal argument is that the *regulation* challenged in this case—which establishes a framework for similar CDC orders issued under 42 U.S.C. § 265—was vacated below, and that the government is burdened by that vacatur. Mot. 18.[2] But Defendants themselves previously announced their intention "to undertake a new rulemaking to reconsider the framework under which the CDC Director may exercise her authority under 42 U.S.C. § 265 to respond to dangers posed by future communicable diseases." D. Ct. ECF No. 179 at 2. The government would not be harmed by leaving the regulation vacated while it proceeds with that announced plan. And because the district court's judgment was based entirely on Defendants' arbitrary and capricious reasoning, Defendants can address the flaws the court identified in their subsequent rulemaking. *Cf.* Mot. 18 (wrongly suggesting that leaving the judgment in place would prohibit Defendants from addressing the district court's reasoning).

Indeed, it is particularly appropriate here that the regulation remain vacated, encouraging the government to reconsider its approach to § 265 in the intended

---

[2] The government also seeks to vacate the injunction prohibiting enforcement of the regulation against the class in this case. To the extent that injunction has any ongoing effect now that the expulsions have ceased, *see Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 162-64 (D.D.C. 2021) (addressing class definition), Plaintiffs do not oppose its dissolution.

3

new rulemaking.  In the earliest days of the COVID-19 pandemic, the government invoked § 265 to expel people from the United States for the first time *ever* in the over-century-long history of that statute.  Mot. 3.  Numerous reports indicated that decision was not based on the public health judgment of CDC experts, who were overruled under White House pressure.[3]

And while this Court tentatively concluded that the government's asserted expulsion authority was lawful, it did so on a statutory theory the government has itself never advanced or endorsed.  *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 729, 733 (D.C. Cir. 2022) (relying on 8 U.S.C. § 1227(a)(1)(B) to provide expulsion authority, an argument the government has never made, but noting that its legal conclusions would not bind future courts).  Particularly given the "stomach-churning" pattern of "death, torture, and rape" caused by the Title 42

---

[3] *See, e.g.*, *CDC Officials Objected to Order Turning Away Migrants at Border*, The Wall Street Journal (Oct. 3, 2020), https://www.wsj.com/articles/cdc-officials-objected-to-order-turning-away-migrants-at-border-11601733601; *Pence Ordered Borders Closed After CDC Experts Refused*, AP News (Oct. 3, 2020), https://apnews.com/article/virus-outbreak-pandemics-public-health-new-york-health-4ef0c6c5263815a26f8aa17f6ea490ae; *Inside the Fall of the CDC*, ProPublica (Oct. 15, 2020), https://www.propublica.org/article/inside-the-fall-of-the-cdc; *Top CDC Official Told Congress Migrant Expulsion Policy Was Not Needed to Contain COVID*, CBS News (Nov. 12, 2021), https://www.cbsnews.com/news/cdc-official-told-congress-migrant-expulsion-policy-not-needed-to-contain-covid/.  These reports were subsequently corroborated by congressional interviews.  *See* Ex. to Pls. Opp.'n to States' Mot. for Stay (Dec. 14, 2022) (testimony of Dr. Martin Cetron, Director of CDC's Division of Global Migration and Quarantine).

4

policy, *id*. at 733, the government's assertion of an expulsion power in the now vacated regulation, *see* 42 C.F.R. § 71.40(b)(2), is ripe for reconsideration. Because Defendants themselves announced their intention to undertake just such a reconsideration in a new rulemaking, the court should decline to vacate the district court's judgment.

　　The inappropriateness of vacatur is underscored by Defendants' tactical choice to *avoid* litigating this appeal. At the time they appealed the district court's judgment, Defendants announced that in lieu of briefing they would move this court to "to hold the appeal in abeyance pending," *inter alia*, the "forthcoming rulemaking to replace § 71.40." D. Ct. ECF No. 179 at 1. They noted that "[t]he outcome of that rulemaking could . . . moot Plaintiffs' challenge to" the regulation, *id*. at 2, and apparently contemplated thereafter seeking *Munsingwear* vacatur from this Court.

　　But vacatur is not warranted when a lower court judgment is "not *unreviewable*, but simply *unreviewed* by [the losing party's] own choice." *U.S. Bancorp*, 513 U.S. at 25 (emphasis added). Where, as here, "the losing party has voluntarily forfeited [its] legal remedy by the ordinary processes of appeal," it "thereby surrender[s] [its] claim to the equitable remedy of vacatur." *Id*. Nor does it matter that in the end the case was mooted by HHS's choice to end the Public Health Emergency, rather than the anticipated choice to replace the regulation.

5

The basic fact remains that the government never intended to litigate the merits of this appeal, thereby forfeiting its equitable claim to vacatur. Under these unusual circumstances, the government has not carried its burden to justify the "*extraordinary* remedy of vacatur." *U.S. Bancorp*, 513 U.S. at 26 (emphasis added).

The government notes that the Supreme Court vacated this Court's intervention denial order, and suggests that this Court must therefore likewise vacate the district court's judgment. Mot. 17. But that does not follow. The putative intervenor States were denied intervention before this Court and sought review of that decision in the Supreme Court. Mot. 7. Those States did not cause the subsequent mootness—the federal government did. Thus the Supreme Court's order addressed the more straightforward *Munsingwear* situation in which "mootness results from the unilateral action of the party who *prevailed* in the lower court"—in the case of the Supreme Court litigation, the federal government which had successfully opposed intervention before this Court. *U.S. Bancorp*, 513 U.S. at 23 (emphasis added); *see Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71-72 (1997) (cited by government) (emphasizing appealing party did not cause mootness); *Planned Parenthood of Wisconsin, Inc. v. Azar*, 942 F.3d 512, 519 (D.C. Cir. 2019) (cited by government) (same). The government's motion before this Court addresses a different situation, because mootness is here caused by the

6

party that *lost* below. That makes all the difference: The Supreme Court has explained that the "principal condition to which we have looked" in assessing whether vacatur is inappropriate "is whether *the party seeking relief from the judgment below* caused the mootness by voluntary action." *U.S. Bancorp*, 513 U.S. at 24 (emphasis added). Here, it did.

The other cases granting vacatur on which the government relies are likewise unavailing. As its own cases note, the power to vacate is "flexible," and its appropriateness turns on the particular circumstances of a case. *Alvarez v. Smith*, 558 U.S. 87, 94 (2009). In *Alvarez*, for example, a county resolved various state court cases, mooting the related pending federal litigation against it. The Court vacated the lower court judgment, emphasizing that the county "did not coordinate the resolution of plaintiffs' state-court cases, either with each other or with plaintiffs' federal civil rights case" and that "the presence of this federal case played no significant role in the termination of the separate state-court proceedings." *Id*. at 96-97. In other words, where a government's left hand operates independently from its right, resulting mootness may well be described as "happenstance." *Id*. at 94 (internal quotation marks omitted). But that is not the case here. Indeed, the government's announcement that it intended to let the public health emergency lapse specifically referred to the connection that decision

7

would have with the Title 42 Policy and the Supreme Court's order in this very litigation. *See* OMB Statement, *supra* note 1 at 2.

Ultimately, the government has not identified any case in which vacatur was granted under the unusual circumstances of this case, nor any persuasive equitable justification for vacating the judgment below.

## CONCLUSION

The Court should deny the motion to vacate, and remand with instructions to dismiss the still pending claims as moot.

Dated: June 26, 2023                                Respectfully Submitted,

Stephen B. Kang                                     /s/ Lee Gelernt
Cody Wofsy                                          Lee Gelernt
Morgan Russell                                      Omar Jadwat
My Khanh Ngo                                        Daniel A. Galindo
American Civil Liberties Union                      American Civil Liberties Union
Foundation, Immigrants' Rights                      Foundation, Immigrants' Rights
Project                                             Project
39 Drumm Street                                     125 Broad Street, 18th Floor
San Francisco, CA 94111                             New York, NY 10004
(415) 343-0774                                      (212) 549-2660
skang@aclu.org                                      lgelernt@aclu.org
cwofsy@aclu.org                                     ojadwat@aclu.org
mrussell@aclu.org                                   dgalindo@aclu.org
mngo@aclu.org

                                                    Irit Tamir
Adriana Cecilia Pinon                               Oxfam America
American Civil Liberties Union                      226 Causeway Street, Suite 500
Foundation of Texas, Inc.                           Boston, MA 02115
5225 Katy Freeway, Suite 350                        (617) 482-1211
Houston, Texas 77007
(713) 942-8146

8

<div style="column-count:2">

apinon@aclutx.org

Karla M. Vargas
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
(956) 787-8171
karla@texascivilrightsproject.org

Melissa Crow
Center for Gender &
Refugee Studies
1121 14th Street, NW, Suite 200
Washington, DC 20005
(202) 355-4471
crowmelissa@uchastings.edu

Blaine Bookey
Karen Musalo
Neela Chakravartula
Center for Gender &
Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877
bookeybl@uchastings.edu

Scott Michelman
Arthur B. Spitzer
American Civil Liberties Union
Foundation of the District of
Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Maria R. Osornio
Refugee and Immigrant Center for
Legal Education and Legal
Services (RAICES)
5121 Crestway Drive, Suite 105
San Antonio, TX 78201
(210) 960-3206

*Counsel for Plaintiffs-Appellees*

</div>

9

## CERTIFICATE OF COMPLIANCE

This motion response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(1)(E) and (2)(A) because:

1. It contains 1,724 words.

2. It complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Professional Plus 2019 in 14-point Times New Roman font.

<div style="text-align:right">

*/s/Lee Gelernt*
Lee Gelernt

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the DC Circuit by using the CM/ECF system. A true and correct copy of the foregoing has been served via the Court's CM/ECF system on all counsel of record.

<div style="text-align:right">

*/s/Lee Gelernt*
Lee Gelernt

</div>